IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

JOSE SHOMO,

                           Plaintiff,

               v.                          Civil Action No.
                                           9:04-CV-00707 (LEK/DEP)


GLENN S. GOORD, *et al.*,

                           Defendants.

─────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

JOSE J. SHOMO, *pro se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO               JEFFREY P. MANS, ESQ.
New York State Attorney General    Assistant Attorney General
Office of the Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     Plaintiff Jose Shomo, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis,* has commenced this civil rights

action pursuant to 42 U.S.C. § 1983 claiming deprivation of his constitutionally protected rights.  In a complaint which is extensive and chronicles the relevant events in detail – literally on a day-by-day basis – the plaintiff, who is disabled and receives assistance in brushing his teeth twice each day pursuant to a plan developed for his care, challenges the decision of prison officials to perform that function at a time which he has chosen to fulfill his religious prayer obligations.  Plaintiff maintains that the actions of the defendants in refusing to accommodate his request to have his teeth brushed when he is not engaged in prayer violates his constitutional and statutory rights including, *inter alia*, under the First, Eighth and Fourteenth Amendments to the United States Constitution as well as under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), codified in relevant part at 42 U.S.C. § 2000cc-1(a), and seeks recovery of compensatory and punitive damages of not less than $100 million.

Currently pending before the court is a motion filed by the named defendants who to date have appeared in this action, seeking entry of summary judgment dismissing plaintiff's complaint on a variety of bases, including both procedurally based upon Shomo's failure to exhaust

2

available internal administrative remedies prior to commencing this action,

and on the merits.  Defendants also assert their entitlement to qualified

immunity from suit as an alternative basis for dismissal.  For the reasons

set forth below, I find that plaintiff has failed to fulfill his obligation to

exhaust available administrative remedies and thus recommend that his

claims be dismissed.

I.      BACKGROUND

Since January 4, 2001 the plaintiff, a practicing Rastafaran, has

been a New York State prison inmate entrusted to the custody of the New

York State Department of Correctional Services ("DOCS").  Complaint

(Dkt. No. 1) ¶ 34.  At the times relevant to his claims, Shomo was confined

within the Walsh Regional Medical Unit ("Walsh RMU"), a maximum

security medical compound contained within the Mohawk Correctional

Facility ("Mohawk"), located in Rome, New York.  *Id.* ¶ 2.  The Walsh RMU

provides chronic, long-term care for inmates whose needs cannot be met

in local prison infirmaries, but yet do not require hospitalization or similar

acute care elsewhere in a non-custodial setting.  A plan is developed for

each patient at the Walsh RMU to address the delivery of specific health

care and other related services for that particular inmate.  Nellenbach

3

Decl. (Dkt. No. 41-3) ¶ 5.  Inmate health care plans for facility patients are developed by teams typically compromised of a physician, the deputy superintendent of health services, nurse administrators, dieticians, occupational therapists, counselors, security and nursing staff, and other appropriate personnel.  *Id.*

From the latter part of 2003 through at least May of 2004, plaintiff was assigned to the Walsh RMU due to his inability to use his arms and hands and the resulting need for assistance with such daily activities as bathing, dressing, and dental care.  Complaint (Dkt. No. 1) at ¶ 34; Mans Aff. (Dkt. No. 41-6) Exh. A at 45-47.  The plan developed at the Walsh RMU for plaintiff's care provided for staff to assist him twice daily in brushing his teeth.  Nellenbach Decl. (Dkt. No. 41-3) ¶ 7.  While the morning dental maintenance appears to have been accomplished over time without incident, the evening brushing proved to be problematic.  In light of the fact that the evening shift for staff members at the Walsh RMU typically ends at 11:00 pm, with the last hour of each shift generally reserved for completion of paperwork and other duties incident to the shift change, prison officials scheduled plaintiff's evening brushing to occur between 9:15 pm and 9:45 pm, as part of a unit routine.  *Id.* ¶ 7.

4

Unfortunately, this schedule conflicted with the voluntary hour of prayer by the plaintiff, who chose to fulfill his prayer obligation between the hours of 9:00 pm and 10:00 pm.[1]  Complaint (Dkt. No. 1) ¶ 35.  Between November 30, 2003 and commencement of this action, when called by staff members for brushing assistance, plaintiff often was engaged in prayer, and thus did not respond; consequently, the nursing staff at the Walsh RMU failed to brush his teeth during the evening on many occasions between November of 2003 and commencement of this action. Complaint (Dkt. No. 1) at ¶¶ 35-138.

On December 2, 2003, plaintiff wrote to defendant then-DOCS Commissioner Glenn Goord, requesting that his schedule be changed to accommodate his prayers, and accusing Walsh RMU staff of harassing him by calling his name for services while he was in prayer.  Complaint (Dkt. No. 1) at ¶ 21.  A copy of that letter also was sent to defendant J. Rosado, the Deputy Superintendent of Health Services at Mohawk.  *Id.* at ¶ 24.  By letter dated December 19, 2003, defendant Wright responded on

---

[1]    According to the plaintiff, as a practicing Rastafarian his religious practice is to pray every day at various times, principally at dawn, mid-day, and sunset.  Mans Aff. (Dkt. No. 41-6) Exh. A at 81, 102-05.  The precise times associated with these periods vary with the calendar utilized by Muslims.  *Id.* at 102.  Shomo acknowledges that it is his choice to pray between the hours of 9:00 pm and 10:00 pm, and his religious tenets do not specifically require prayer during that period.  *Id.* at 81, 102; *see also* Complaint (Dkt. No. 1) ¶¶ 35, 39.

behalf of former Commissioner Goord, explaining that establishing specific times for providing patient care was a means of maximizing limited resources, and that plaintiff's "allegations are not founded."  *Id.* at Exh. 1. Defendant Haywood, a Nurse Administrator at the facility, responded on behalf of Deputy Superintendent Rosado, reiterating that the routines in place at the Walsh RMU dictated that brushing of the plaintiff's teeth would not be done after 10:00 p.m.  *Id.* at Exh. 3.

Plaintiff again wrote to defendant Goord on March 2, 2004, expressing the same complaints.  Defendant John H. Nuttall, the DOCS Deputy Commissioner of Programs, responded on that occasion on behalf of former Commissioner Goord by letter dated March 24, 2004, denying Shomo any relief based on his claims.  *Id.* at Exh. 2.  While plaintiff has complained to local prison officials and DOCS administrative personnel regarding the matters now in dispute, he acknowledges never having filed an institutional grievance in accordance with the available DOCS grievance procedure.  *Id.* at ¶ 30; *see also* Mans Aff. (Dkt. No. 41-6) Exh. A at 83-87.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on June 18, 2004, and has since

been granted leave to proceed *in forma pauperis*.  Dkt. Nos. 1, 8.   In his

complaint, plaintiff has named as defendants former DOCS Commissioner

Glenn Goord; Deputy DOCS Commissioner and Chief Medical Officer Dr.

Lester Wright; John Nuttall, the Deputy DOCS Commissioner of Programs;

and a number of administrative and staff employees at Mohawk.  Dkt. No.

1.  Plaintiff's complaint asserts constitutional claims under the First, Eighth

and Fourteenth Amendments to the United States Constitution, including

principally based upon the alleged interference with the free exercise of

his religious beliefs, as well as various other related causes of action

under the RLUIPA as well 42 U.S.C. §§ 1981, 1984, 1985 and 1986.

*Id.*

        Following the joinder of issue and pretrial discovery, which included

the taking of plaintiff's deposition, the defendants who have thus far

appeared in the action moved on October 30, 2006 seeking the entry of

summary judgment in their favor.  Dkt. No. 41.  In their motion, defendants

contend that plaintiff's complaint is subject to dismissal on several

grounds, arguing that 1) plaintiff cannot prove sufficient interference with

his religious free exercise rights to overcome defendants' legitimate

penological interests in providing brushing assistance in accordance with

7

the established prison schedule; 2) plaintiff has failed to prove a

sufficiently substantial interference with his sincerely held religious beliefs

to sustain a claim under the RLUIPA; 3) plaintiff has failed to plead and

prove a cognizable claim for retaliation; 4) defendants Goord, Nuttal,

Wright, Perlman, and Rosado lack sufficient personal involvement in the

alleged violations to be held liable; 5) plaintiff's claims should be

dismissed based upon his failure to exhaust administrative remedies with

respect to this claim; and 6) in any event, they are entitled to qualified

immunity.  Defendants' Memorandum of Law (Dkt. No. 41-10).  In

opposition to defendants' motion, plaintiff has submitted a lengthy

response, generally denying each of the grounds asserted by defendants.

Dkt. No. 45.  As part of plaintiff's opposition, he offers four exhibits,

including a Muslim prayer schedule, plaintiff's appeal from a decision

regarding his medical care at his new facility, the decision resulting from

that appeal, and DOCS Directive 4040, setting forth the procedures

associated with the DOCS inmate grievance program.  *Id.* at Exhs. 1-4.

Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

8

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Unserved Defendants

Two of the defendants named in plaintiff's complaint, including E. Haywood, a nurse administrator at Mohawk, and J. Bradley, a registered nurse at the facility, have yet to be served.  On April 12, 2006, following the return of unexecuted acknowledgment forms related to those two defendants, *see* Dkt. Nos. 20, 21, plaintiff was granted additional time to arrange for service of the summons and complaint upon them.  Dkt. No. 40.  Despite that extension, those defendants nonetheless have not been served, nor have they waived the requirement of service or otherwise appeared in the action.

Rule 4(m) authorizes dismissal where a summons and complaint is not served within 120 days after filing of the complaint, absent a showing of good cause.[2]  Fed. R. Civ. P. 4(m); *Shuster v. Nassau County,* No. 96 Civ. 3635, 1999 WL 9847, at *1 (S.D.N.Y. Jan. 11, 1999) (Rule 4(m) authorizes dismissal where no service occurs within one hundred twenty days after filing of the complaint).  The 120-day  period for service of a

---

    [2]    That period is further restricted by the local rules of this court, which require that service be effected within sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

summons and complaint by a plaintiff under Fed. R. Civ. P. 4(m) applies to *pro se* plaintiffs as well as those litigants represented by counsel. *Romand v. Zimmerman,* 881 F. Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.).

The record in this case does not include a return of service with regard to defendants Haywood and Bradley, nor does it provide any other indication that they have been served with the summons and complaint or waived the service requirement and voluntarily appeared in the action. The court thus has yet to acquire jurisdiction over them and accordingly, given the passage of more than 120 days since issuance of the summons, and since the record discloses no basis to conclude that good cause exists to extend that time period, I recommend plaintiff's complaint be dismissed as against defendants Haywood and Bradley, without prejudice, on the basis of plaintiff's failure to effectuate timely service upon them. *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).

B.    Summary Judgment Standard

_____Defendants' motion is brought pursuant to Rule 56 of the Federal

Rules of Civil Procedure, which governs summary judgment.  Under that

provision, summary judgment is warranted when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together

with the affidavits . . . show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477

U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co.

of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.

2004).  A fact is "material", for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in

dispute "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510.  Though *pro se* plaintiffs are entitled to special latitude when

defending against summary judgment motions, they must establish more

11

than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a

12

rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

C.     Plaintiff's Failure to Exhaust Administrative Remedies

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* __ U.S. __, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-

6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* __ U.S. __, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also*

14

*Woodford*, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 126 S. Ct. at 2388; *see also Macias v. Zenk*, __ F.3d __, 2007 WL 2127722, at *3 (2d Cir. July 26, 2007) (citing *Woodford*). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 2007 WL 2127722, at *3 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *Macias*, 2007 WL 2127722, at *3; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004). Under the prescribed algorithm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant

15

times. *Macias,* 2007 WL 2127722, at *3; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias*, 2007 WL 2127722, at *3; *Hemphill*, 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[3] *Macias*, 2007 WL 2127722, at *3; *Hemphill*, 380 F.3d at 686.

### 1.   Availability of Remedy

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the Department of Correctional Services ("DOCS"), and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4

---

[3]      These three prongs of the prescribed test, though distinct, plainly admit of significant overlap. See *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

(S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[4]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.5(c).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Despite an inmate's entitlement under most circumstances to file

---

[4]      The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

and pursue a grievance in accordance with the IGP, there are circumstances under which the grievance procedure nonetheless is deemed not to have been available to an inmate plaintiff. *See Hemphill*, 380 F.3d at 687-88. Thus, for example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, . . . or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove,* 2007 WL 389003, at *8 (citations omitted) (noting, for example, that a defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Id.* at 688 (internal quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

In his complaint, plaintiff makes the following allegation addressing the exhaustion of remedies:

18

> [n]o institutional grievance was filed in this
> action as it does not seek to challenge prison
> conditions as required by the Prison Litigation
> Reform Act.  See, Marvin V. Goord, 255 F.3d 40 [sic].

Complaint (Dkt. No. 1) ¶ 30.  During his deposition, plaintiff reiterated his

acknowledgment of not having filed a formal grievance, although offering

various justifications for that failure.  See Mans Aff. (Dkt. No. 41-6) Exh. A

at 83 *et seq*.  Later, however, in his response to defendants' motion

Shomo asserted that he did in fact submit a grievance concerning the

matter, thus satisfying the exhaustion requirement.  A review of the

materials associated with that grievance, however, are at best equivocal

concerning its nature.  The grievance, filed by the plaintiff on October 19,

2004, following his transfer into the Wende Correctional Facility, is entitled

"assist with activities of daily living"; neither it nor the notations in response

to that grievance, which apparently was pursued by the plaintiff through

the completion of the CORC step in the IGP, however, disclose the

particulars of the grievance, and specifically whether it was related to the

refusal of prison officials at the Walsh RMU to assist plaintiff in brushing

his teeth before or after his daily prayer.  In any event, even if the court

were to construe this grievance as having been related to the claims now

asserted, dismissal would be warranted since the PLRA requires that

19

administrative remedies be exhausted *prior to* the filing of suit.  *Neal v.*

*Goord*, 267 F.3d 116, 121(2d Cir. 2001), *overruled in part on other*

*grounds*, *Porter v. Nussle*, 534 U.S. 516, 531, 122 S. Ct. 983, 992 (2002);

*Pettus*, 2006 WL 2639369, at *1.

In defense of his failure to exhaust, plaintiff asserts his belief that

grievances regarding medical issues are excluded from coverage of the

IGP and that in fact DOCS administrators have determined that such

issues are not grievable.  Having reviewed carefully the terms of the IGP,

both as currently constituted and under the version in place in 2003, I can

find no basis to conclude that plaintiff's self-serving, conclusory assertion

regarding the non-grievability of his dispute is supportable.  Indeed, the

issue now being raised reflects a tension between an inmate's religious

beliefs and legitimate prison administration concerns, and as such is

precisely the type of situation which lends itself well to review through the

established DOCS grievance process.  Since plaintiff's unilateral and

misguided belief, however sincere it may have been, that this dispute is

not grievable, or that a formal grievance would have been unsuccessful,

does not excuse the requirement of exhaustion,  *Giano v. Goord*, 250 F.3d

146, 150-51 (2d Cir. 2001); *Ross v. Gibson*, No. 06-CV-0064, 2006 WL

20

2567853, at *5 (D. Colo. Aug. 8, 2006) (Hegarty, M.J.), *adopted*, Dkt. No.

27 (D. Colo. Aug. 31, 2006) (Daniel, D.J.) (exhaustion is required, even if

the inmate mistakenly believes his claim is non-grievable); *Wagnoon v.*

*Johnson*, No. 02 Civ 10282, 2003 WL 22384770, at * 4 (S.D.N.Y. Oct. 20,

2003) (Gorenstein, M.J.), *adopted*, Dkt. No. 33 (S.D.N.Y. Mar. 23, 2004)

(Casey, D.J.) (exhaustion is required, even where the inmate believes

such an effort would be futile), I recommend a finding that the IGP

grievance process was available to the plaintiff to air his dispute internally

before commencing a civil rights action.

### 2.   Presentation of Defense/Estoppel

The second prong of the *Hemphill* analysis focuses upon "whether

the defendants may have forfeited the affirmative defense of non-

exhaustion by failing to raise or preserve it, or whether the defendants'

own actions inhibiting the inmate's exhaustion of remedies may estop one

or more of the defendants from raising the plaintiff's failure to exhaust as a

defense."  *Hemphill,* 380 F.3d at 686 (citations omitted).

A review of the answer filed on behalf of the defendants in this

action reveals that the defense of exhaustion of administrative remedies

has been properly interposed.  *See* Answer (Dkt. No. 34) ¶ 30.  Plaintiff

argues, however, that defendants should be estopped from relying upon the defense as a procedural bar to litigating his various claims.  That contention is based upon the apparent assertion that because, under the IGP, complaints regarding staff harassment must first be forwarded to the superintendent, who must then forward the grievance to the IGP, plaintiff's grievance obligation was fulfilled when he filed and served his complaint in this action, and it was incumbent upon the superintendent to forward that complaint to the IGP.  The PLRA, however, requires completion of the exhaustion process before commencement of suit.  *Neal v. Goord,* 267 F.3d at 121; *Pettus,* 2006 WL 2639369, at *1.  Since plaintiff does not allege that he forwarded an actual grievance regarding the matter to the superintendent, believing that it implicated an issue of staff harassment, prior to commencing this action, he has not provided a basis for finding that the defendants are estopped from relying upon his failure to exhaust as a basis to seek dismissal of his claims.

3.    Special Circumstances

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing

a plaintiff's failure to exhaust administrative remedies.  *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.  *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*).

In his opposition plaintiff also asserts the existence of special circumstances justifying his failure to file a grievance.  Plaintiff fails, however, to identify those particular circumstances.  Having reviewed the record carefully, I discern no basis to find the existence of such special circumstances excusing compliance with the grievance requirement.

In support of his claim of special circumstances, plaintiff may be relying in part upon the letters sent by him to DOCS officials, including two to Commissioner Goord, claiming that this correspondence should have sufficed to serve as grievances, and therefore he has not failed to exhaust administrative remedies.  Dkt. No. 45 at ¶ 9.  This argument is unavailing, however, as "'[c]ourts have repeatedly held that complaint letters to the

23

DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements.'" *Wagnoon*, 2003 WL 22384770, at *5 (quoting *Branch v. Brown*, No. 01 Civ. 8295, 2003 WL 21730709, at *8 (S.D.N.Y. July 25, 2003)). Since the PLRA requires a showing of proper exhaustion, *Woodford*, 126 S. Ct. at 2388; *see also Macias*, 2007 WL 2127722, at *3 (requiring procedural exhaustion, as distinguished from substantive exhaustion whereby prison officials are informed of an inmate's complaints in a less-structured setting than the established grievance process), plaintiff's letters to prison officials do not satisfy its exhaustion mandate.

I note that plaintiff also attributes his failure to file an institutional grievance, and therefore to meet the formal requirements of the grievance process, to his reasonable reliance on *Marvin v. Goord,* 255 F.3d 40 (2d Cir. 2001), and its progeny. In *Marvin*, the Second Circuit recognized a distinction, for PLRA exhaustion purposes, between claims arising out of "prison conditions" generally and conduct directed at individual inmates. *Id.* at 42. Under its reading of the PLRA in *Marvin*, the Second Circuit held that claims arising from single events of misconduct aimed at an individual were not subject to the requirement of formal exhaustion. *Id.*

24

Unfortunately for the plaintiff, however, subsequent to its decision in that case, the Supreme Court struck down the Second Circuit's distinction between claims involving individuals and those involving prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983 (2002).  While plaintiff professes reliance upon earlier, now-invalidated Second Circuit rulings and offers that reliance as a basis for excusing the PLRA's exhaustion requirement in his case, it should be noted that by the time of the initial incident in October 2003, *Porter* had already been decided, and thus was the controlling law on the matter.  Accordingly, plaintiff's reliance upon the earlier-recognized, pre-*Porter* distinction regarding the types of prison conditions subject to the exhaustion requirement, to the extent that it may have supported his position – a somewhat dubious proposition at best – is misplaced, and thus does not constitute special circumstance excusing the exhaustion requirement.

In sum, in light of plaintiff's acknowledged failure to file a formal grievance with respect to his claim, I recommend that defendants' motion for summary judgment be granted, and plaintiff's complaint be dismissed in its entirety, and find it unnecessary to address the other arguments raised by the defendants attacking the sufficiency of plaintiff's claims on

the merits and claiming entitlement to qualified immunity.

IV.    SUMMARY AND RECOMMENDATION

_____Because the record now before the court firmly establishes the plaintiff's failure to file and pursue to completion, through decision by the CORC, a grievance related to the matters now complained of, and discloses no legitimate basis for excusing that requirement, I recommend that plaintiff's complaint in this action be dismissed on this procedural basis without considering the merits of his claims, without prejudice.  *See Petit v. Bender*, No. 99 CIV. 0969, 2000 WL 303280, at *3 (S.D.N.Y. Mar. 22, 2000).  It is therefore hereby

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 41) be GRANTED, and the plaintiff's complaint be DISMISSED in its entirety, without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.


Dated:      August 13, 2007
            Syracuse, NY


———————

David E. Peebles
U.S. Magistrate Judge